**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

SCHUYLER CHENAULT,

      Petitioner,                 Civil No. 5:15-CV-12686
                                   HONORABLE JOHN CORBETT O'MEARA
v.                               UNITED STATES DISTRICT JUDGE

SHERMAN CAMPBELL,

      Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL *IN FORMA PAUPERIS*

      Schuyler Chenault, ("Petitioner"), confined at the Bellamy Creek Correctional

Facility in Ionia, Michigan, has filed a petition for a writ of habeas corpus pursuant to 28

U.S.C. § 2254. In his application, filed through his attorney, Craig A. Daly, petitioner

challenges his convictions for first-degree felony murder, M.C.L.A. 750.316, and

possession of a firearm during the commission of a felony, M.C.L.A. 750.227b. For the

reasons stated below, the petition for a writ of habeas corpus is **DENIED.**

### I. Background

      Petitioner was convicted of the above offenses following a jury trial in the Oakland

County Circuit Court. This Court recites verbatim the relevant facts relied upon by the

Michigan Supreme Court in affirming petitioner's conviction, which are presumed correct

on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410,

The defendant's convictions for felony murder, MCL 750.316(1)(b), and possession of a firearm during the commission of a felony, MCL 750.227b, arose out of the shooting death of Kevin Harris in Pontiac, Michigan, on June 29, 2008. Harris was a cocaine dealer, who often used Jared Chambers as a middleman to connect with buyers. Chambers occasionally contacted Harris through Harris's girlfriend, Heather Holloway.

On June 29, 2008, Chambers arranged a transaction between the defendant and Harris. The defendant and Chambers, together with several others, met Harris on a side street in Pontiac. Harris pulled up behind the defendant's car. Holloway was in Harris's passenger seat. As both Chambers and the defendant approached Harris' car, shots were fired at Harris, and he was struck in the head.

The Pontiac Police Department conducted an investigation and interviewed Holloway on June 29 and July 2, 2008, and Chambers on June 30, 2008. All of these interviews were video recorded. Holloway also produced two written statements, one after each interview, and Detective Steven Wittebort summarized the interviews in an incident report. Holloway's written statements and the police report summarizing them were provided to defense counsel before trial, but the video recordings were not.

Holloway was more forthcoming in her second interview than in her first. At her first interview, Holloway told the police that two unknown men walked up to the car and shot Harris. During her second interview, which took place after Harris died on June 30, 2008, Holloway said that Harris had been shot as part of a drug deal. Although Holloway identified the defendant in a photo array, neither of Holloway's written statements mentioned Chambers's presence. According to Wittebort's report, Holloway said that she did not get a good look at the shooter but that she could identify him. The report also revealed that she confidently selected the defendant's photo from an array.

The defendant never denied that he was present at the scene of the shooting, and most of the facts were likewise not in dispute. The sole question at trial concerned the identity of the shooter. Only the defendant, Holloway, and Chambers witnessed the shooting and, unsurprisingly, they did not agree about what happened: the defendant identified Chambers as the shooter while

Holloway and Chambers identified the defendant.[1] There was no physical evidence to tie either the defendant or Chambers to the shooting. The defense theory was that Chambers shot Harris, and that Holloway identified the defendant as the shooter out of fear of Chambers.

On the last day of trial, the prosecution called Wittebort as its final witness. When questioned, Wittebort was surprised that Holloway's second written statement did not confirm that she had mentioned Chambers and was confident that the video recordings would verify his recollection. He was also surprised to learn that the recordings had not been provided to the defendant. On March 11, 2010, the defendant was convicted of felony murder and felony-firearm.

On April 13, 2010, defense counsel filed a motion for a new trial and requested a copy of the interview recordings. Later, counsel amended the motion to add claims of ineffective assistance of counsel and prosecutorial misconduct regarding the failure to provide the recorded statements. There was no dispute that the defendant never had the recordings.[2] The trial court conducted two evidentiary hearings on the motion. On February 29, 2012, Wittebort testified that the police generally let the prosecution know when recordings are available, but the regular practice was to provide them only "if there's an admission or something of that nature from the person of interest or defendant in that matter."[3] On March 8, 2012, the trial court granted the defendant's motion for a new trial, concluding that his due process rights were violated pursuant to *Brady* because the suppressed videotaped recordings undermined confidence in the outcome of the trial.

The Court of Appeals reversed the trial court. *People v. Chenault*, unpublished opinion per curiam of the Court of Appeals, issued November 27, 2012

---

[1] Three others were present at the scene, but did not provide any evidence supporting either theory. Two of them were never questioned by police. The third did not see who shot Harris but testified that immediately after the shot was fired, he saw the defendant standing on the driver's side of Harris's car. The prosecution concedes that the Court of Appeals was mistaken in stating otherwise. (Footnote original).

[2] In fact, the defendant's first counsel submitted an affidavit stating that he had not received the recorded statements. (Footnote original).

[3] Wittebort also testified that he had never heard of the phrase "*Brady* material." (Footnote original).

(Docket Nos. 309384 and 310456).

*People v. Chenault*, 495 Mich. 142, 146–49, 845 N.W.2d 731, 733–35 (2014).

Petitioner seeks a writ of habeas corpus on the following grounds: (1) The prosecutor withheld exculpatory evidence, (2) petitioner was denied a fair trial because of prosecutorial misconduct, (3) ineffective assistance of counsel, and (4) petitioner is entitled to an evidentiary hearing on his ineffective assistance of counsel claims.

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> > (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06

(2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002)(*per curiam*)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior

5

decision" of the Supreme Court. *Id.* Habeas relief is not appropriate unless each ground which supported the state court's decision is examined and found to be unreasonable under the AEDPA. *See Wetzel v. Lambert*, 132 S. Ct. 1195, 1199 (2012).

### III.  Discussion

### A.  Claim # 1.  The *Brady* claim.

Petitioner alleges that the prosecution failed to provide the Pontiac Police Department videotaped interviews of Holloway, made on June 29 and July 2, 2008, and of Chambers made on June 30, 2008, to defense counsel.

To prevail on his claim, petitioner must show (1) that the state withheld exculpatory evidence and (2) that the evidence was material either to guilt or to punishment irrespective of the good faith or bad faith of the prosecution. *Brady v. Maryland,* 373 U.S. 83, 87 (1963).  Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.  A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley,* 473 U.S. 667, 683 (1985).  In *Strickler v. Greene,* 527 U.S. 263, 281-82 (1999), the Supreme Court articulated three components or essential elements of a *Brady* claim: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued.  "Prejudice (or materiality) in the *Brady* context is a difficult test to meet." *Jamison v. Collins*, 291 F.3d

380, 388 (6th Cir. 2002). A habeas petitioner bears the burden of showing the

prosecution suppressed exculpatory evidence. *See Bell v. Howes*, 703 F.3d 848, 853 (6th

Cir. 2012).

As found by the Michigan Supreme Court, the prosecution conceded that the

evidence was suppressed and that the evidence was favorable to petitioner. However, in

a detailed opinion, the Michigan Supreme Court further found that petitioner failed to

meet the third prong of the suppression test as follows:

> We now apply the controlling *Brady* test to the defendant's claim. As an
> initial matter, we note that the prosecution has conceded that the evidence in
> question was suppressed. That leaves two questions: whether the suppressed
> evidence was favorable to the defendant, either as exculpatory or impeaching
> evidence, and whether it was material.
>
> In contrast to the question of materiality, the favorability of evidence is a
> simple threshold question that need not delay us long. Only three people
> witnessed the shooting: Holloway, Chambers, and the defendant. Other than
> the testimony of Holloway and Chambers, there was no other evidence at trial
> that identified the defendant as the shooter. Because the videotaped
> statements could have impeached Holloway and Chambers as well as
> undermined the strength of Holloway's identification, the evidence was
> favorable to the defense.
>
> We are not convinced, however, that the suppressed evidence was material.
> "The question is not whether the defendant would more likely than not have
> received a different verdict with the evidence, but whether in its absence he
> received a fair trial, understood as a trial resulting in a verdict worthy of
> confidence." We conclude that, even in the absence of the suppressed
> evidence, the defendant received a trial that resulted in a verdict worthy of
> confidence, because the cumulative effect of the evidence was not material.
>
> We disagree with the defendant that Wittebort's promises of leniency to both
> Holloway and Chambers were material. While the detectives assured both
> witnesses that they would not be investigated or charged for drug crimes,
> these promises of leniency were not conditioned on any behavior on the part

of the witnesses. Indeed, Chambers decided not to make any written statement even after such promises were made, and, likewise, any alleged promises of leniency occurred after Chambers implicated himself in the drug activity. For her part, Holloway also admitted that she lied in her first interview, promises of leniency notwithstanding, and in her second interview, the alleged promises were made after she disclosed the drug activity.

We are similarly unconvinced that the evidence would have undermined Holloway's identification of the defendant in a material way. While there were minor discrepancies between the characterization of Holloway's identification as expressed in the disclosed material and at trial as contrasted with her recorded identification, she was able to quickly identify the defendant as the shooter in her second interview. Although the specific strong language that Wittebort attributed to Holloway as she identified the defendant is not supported by the recording, Holloway did identify the defendant with confidence. Holloway's honest qualifications about her ability to view the shooter do not undermine the overall strength of her identification.

Finally, we disagree with the defendant that the suppressed evidence supports his trial theory that Chambers was the shooter, and that Holloway only identified the defendant as the shooter out of fear of Chambers. Although Holloway was not forthright in her first statement about Chambers's involvement, in her second interview she expressed confidence that Chambers must have been involved. If Holloway were frightened of Chambers to the extent that she would implicate an innocent third party, she would not have engaged in a discussion with the police about Chambers's own culpability. The suppressed evidence did not contain information that leads us to conclude that defense counsel would have asserted the defense that Holloway misidentified the defendant, rather than the cover-up theory that defense counsel pursued at trial. Furthermore, another witness placed the defendant on the side of Harris's car where the shooter indisputably stood.

We therefore conclude that, even in the absence of the suppressed evidence, the defendant received a trial that resulted in a verdict worthy of confidence. The defendant's *Brady* claim must fail because the suppressed evidence was not material to his guilt.

*People v. Chenault*, 495 Mich. at 156–59 (2014)(citations and footnote omitted).

Petitioner has met the first and second prong of the *Brady* test, as articulated in

*Strickler v. Greene*, by showing suppressed evidence favorable to his defense; however, petitioner fails to satisfy the third prong of the test by demonstrating that the evidence was material, in that it would have undermined the confidence in the verdict.

Petitioner argues that the videotaped recording would have impeached the testimony of Holloway and Chamber who testified that they were present when Harris was shot in the head.

Evidence that impeaches a witness "may not be material if the State's other evidence is strong enough to sustain confidence in the verdict." *Smith v. Cain*, 132 S. Ct. 627, 630 (2012)(citing *United States v. Agurs*, 427 U.S. 97, 112–113, and n. 21 (1976)). Impeachment evidence may be considered to be material where the witness in question supplies the only evidence linking the defendant to the crime or the only evidence of an essential element of the offense. *See United States v. Avellino,* 136 F.3d 249, 256 (2nd Cir. 1998); *Lyon v. Senkowski,* 109 F. Supp. 2d 125, 139 (W.D.N.Y. 2000). The Sixth Circuit has noted that: "[C]onsiderable authority from the Supreme Court and our court indicates that a defendant suffers prejudice from the withholding of favorable impeachment evidence when the prosecution's case hinges on the testimony of one witness." *Harris v. Lafler*, 553 F.3d 1028, 1034 (6th Cir. 2009)(internal citations omitted).

Following the shooting, Detective Steven Wittebort approached Jared Chambers, Heather Holloway, and Keith Randall Mcbee-Blevins Jr. to gather information. Based on the information obtained, Detective Wittebort put together some photographs to see if

9

Chambers and Holloway could identify the shooter. Wittebort returned to Chambers, Holloway, and Mcbee-Blevins with photographs of petitioner and asked if the individual in the pictures was the shooter. Detective Wittebort testified that both Chambers and Holloway immediately identified petitioner as the shooter. (T. 3/11/2010, Vol III, pp. 67-68). Mcbee-Blevins also identified petitioner standing at the driver's side of the vehicle, where Harris was located, at the time of the shooting. (T. 3/9/2010, Vol II, p. 187).

Contrary to petitioner's assertions, the testimony of Holloway and Chambers "was not the central piece of evidence holding together an otherwise feeble case, but was merely one piece of a cumulative evidentiary puzzle." *See Beuke v. Houk,* 537 F.3d 618, 636 (6th Cir. 2008). Because the evidence presented strongly supports a finding that petitioner stood at the driver's side of the vehicle immediately proceeding the firing of gunshots and that both Chambers and Holloway identified petitioner as the shooter following the shooting, the objective evidence in this case sufficiently supported a finding that petitioner shot the decedent. The failure to produce the audio recordings of Holloway and Chamber's statements do not undermine this Court's confidence in the verdict.

The Michigan Supreme Court's findings on the prejudice element of *Brady* were not objectively unreasonable. *See Bell v. Howes*, 703 F.3d at 854. Therefore, "Under AEDPA, if the state-court decision was reasonable, it cannot be disturbed." *Hardy v. Cross*, 132 S. Ct. 490, 495 (2011). Petitioner is not entitled to habeas relief on his first claim.

**B. Claim # 2. The prosecutorial misconduct claim.**

Petitioner alleges that he was denied a fair trial when the prosecutor (a) tried him on a charge not properly before the court, (b) improperly introduced evidence on petitioner's exercise of his right to counsel, (c) introduced and improperly argued other bad acts, (d) made improper arguments not based on evidence at trial and expressed his personal belief in his guilt, and (e) misstated the law to the jury.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004)(citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). A prosecutor's improper comments will be held to violate a criminal defendant's constitutional rights only if they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)(quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Prosecutorial misconduct will thus form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly v. DeChristoforo*, 416 U.S. at 643-45. In order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker v. Matthews*, 567 U.S. 37, 48 (2012)(quoting *Harrington*, 562 U.S. at 103).

Petitioner first contends that the prosecutor committed misconduct by trying him

on a charge that was not properly before the court.  Petitioner was bound over to stand

trial on a charge of first-degree felony murder but the prosecutor later amended the

information in circuit court to a charge of open murder.

Under Michigan law, it is proper to charge a defendant with the crime of open

murder.  Such a charge gives a circuit court jurisdiction to try a defendant on first and

second degree murder charges. *See Taylor v. Withrow,* 288 F.3d 846, 849 (6th Cir.

2002); *see also Williams v. Jones,* 231 F. Supp. 2d 586, 589 (E.D. Mich. 2002)(citing

M.C.L.A. 750.316, 750.318; *People v. McKinney*, 65 Mich. App. 131, 135; 237 N.W.2d

215, 218 (1975)).

The Michigan Court of Appeals applied a plain error review to this claim and

denied petitioner's claim as follows:

> Defendant first argues that the prosecution abused its discretion by issuing the
> third amended information, which was not consistent with the district court's
> bindover determination. As discussed in Issue II, an information may be
> amended at any time to correct a variance between the information and the
> proofs, unless an amendment would unfairly surprise or prejudice the
> defendant. Here, the amendment was consistent with the evidence presented
> at the preliminary examination, it did not involve a new or different crime, it
> occurred months before trial, and it did not affect defendant's defense that he
> was not the shooter. Accordingly, the prosecution did not abuse its discretion
> by issuing the third amended information.

*People v. Chenault*, No. 309384, 2012 WL 12507825, at *12 (Mich. Ct. App. Nov. 27,

2012), *aff'd on other grounds*, 495 Mich. 142, 845 N.W.2d 731 (2014)(internal citation

omitted).

A state criminal defendant has a due process right to be informed of the nature of

the accusations against him or her. *Lucas v. O'Dea,* 179 F.3d 412, 417 (6th Cir. 1999).

Notice and opportunity to defend against criminal charges as guaranteed by the Sixth

Amendment to the United States Constitution are an integral part of the due process

protected by the Fourteenth Amendment and therefore apply to state prosecutions. *Cole*

*v. Arkansas,* 333 U.S. 196, 201 (1948); *In Re Oliver,* 333 U.S. 257, 273 (1948). "The

due process clause of the Fourteenth Amendment mandates that whatever charging

method the state employs must give the criminal defendant fair notice of the charges

against him to permit adequate preparation of his defense." *Olsen v. McFaul,* 843 F.2d

918, 930 (6th Cir. 1988).

A complaint or indictment need not be perfect under state law so long as it

adequately informs the petitioner of the crime in sufficient detail so as to enable him or

her to prepare a defense. Therefore, an indictment "which fairly but imperfectly informs

the accused of the offense for which he is to be tried does not give rise to a constitutional

issue cognizable in habeas proceedings." *Mira v. Marshall*, 806 F.2d 636, 639 (6th Cir.

1986); *see also Dell v. Straub,* 194 F. Supp. 2d 629, 653-54 (E.D. Mich. 2002). An

alleged defect in a state court information or indictment is therefore not constitutional

error unless a habeas petitioner can establish that: (1) he did not receive adequate notice

of the charges; and (2) he was therefore denied the opportunity to defend himself against

the charges. See *Roe v. Baker,* 316 F.3d 557, 570 (6th Cir. 2002). In addition, "When

reviewing amendments to state charging documents in habeas corpus proceedings, the

federal courts focus on the questions whether the defendant was surprised by the

amendment or otherwise prejudiced in his ability to defend himself at trial." *Rhea v. Jones*, 622 F. Supp. 2d 562, 583 (W.D. Mich. 2008)(citing *Tague v. Richards*, 3 F.3d 1133, 1141–42 (7th Cir. 1993); *Wright v. Lockhart*, 854 F.2d 309, 312–13 (8th Cir. 1988)).

The failure to arraign a defendant in open court after an information is filed against him or her is not a deprivation of due process absent a showing of any resulting prejudice. *See Tapia v. Tansy,* 926 F.2d 1554, 1558 (10th Cir. 1991). Formal arraignment is not constitutionally required if it is shown that the defendant knew what he or she was being accused of and is able to defend himself or herself adequately. *Dell v. State of La.,* 468 F.2d 324, 325 (5th Cir. 1972).

Petitioner is unable to show that he was surprised by the amendment of the information or that he was prejudiced in his ability to defend himself at trial. An accused's constitutional right to notice of the criminal charge or charges brought against him or her can be satisfied by other means, such as a preliminary examination. *See Stevenson v. Scutt*, 531 F.App'x 576, 580 (6th Cir. 2013)(noting that victim's testimony from the preliminary examination provided petitioner with notice of the time frame of the assaults). The witness's testimony from the preliminary examination clearly put petitioner on notice as to the nature of the charges. Holloway testified at the preliminary examination that when Jared Chambers entered the car, he sat down and closed the door. Chambers sat behind her. She further testified that petitioner walked across the front of the car, proceeded to the back of the car, opened the back door behind the driver's side

14

of the car and immediately started shooting saying, "Give me everything you got."  After

which, petitioner said to Holloway, "Go bitch, bitch." (T. 9/11/2008, Vol. III, pp. 71-74).

When asked where was Chambers, Holloway testified "Jared was out the car and when I

took off out the car when the first shot fired, I took off running out the car and there was

a boy running in front of me in the park.  And I assumed that that was Jared." (*Id.* at 74).

Chambers testified: "I got out of the car and I go to walk--to sit--when I get out of

the car, I see that "Kutta's" girlfriend, Heather, is with him; so instead of sitting in the

front seat, I go sit in the backseat behind Heather."  Chambers further testified "Schuyler

walks around the back of the car and he walks up to the driver side window and he said,

give me your shit or give me your money, something like that.  And before he even

finished saying that hardly, he shot 'Kutta.'" (*Id.* at 23, 25).

Kevin Mcbee Blevins testified that he was at his trailer with his girlfriend,

daughter and Jared Chambers when a car pulled up with petitioner in the backseat and a

male driver and a female in the front seat.  (T. 9/11/2008, Vol. III, pp. 45-46).  The

record reflects that Blevins and Chamber got into the back seat of the car to drive to

Pontiac to purchase cocaine.  Blevins testified that petitioner and Chambers exited from

the back seat of the car when Harris returned with the cocaine. (*Id.* at 51-55).  Blevins

further testified that after hearing a gunshot, the following occurred:

> I said something to the driver, you know and he turned around and put a
> gun to my face and told me to get out of the car and I got out of the car.
> *************************************************************
> I heard a gunshot and then right after I got out of the car, I heard another
> gunshot.

15

(*Id.* at 56).

The testimony given at the preliminary examination placed petitioner on notice as to the charges against him.

Moreover, petitioner was convicted by a jury after a trial. The Ninth Circuit has observed that neither *Cole v. Arkansas, supra,* nor *In re Oliver, supra,* "foreclose the premise that constitutionally adequate notice may come from evidence presented at trial." See *Troches v. Terhune,* 74 F.App'x 736, 737 (9th Cir. 2003). The witnesses's testimony at trial was sufficient to afford petitioner adequate notice of the charges against him. *See Bruce v. Welsh*, 572 F.App'x 325, 331 (6th Cir. 2014). Furthermore, petitioner's defense at trial shifted the culpability of the shooting death of Harris from himself to Chambers. Petitioner is unable to establish that the failure to formally arraign him on the open murder charge violated his due process right to a fair trial. Petitioner is not entitled to relief on this part of his second claim.

Petitioner alleges that the prosecutor denied him due process and a fair trial by improperly introducing evidence that petitioner exercised his right to counsel when he turned himself into the police accompanied by his attorney.

A prosecutor may not imply that an accused's decision to meet with counsel, even shortly after the incident which gives rise to the criminal charges, implies guilt. A prosecutor must also refrain from suggesting to the jury that a defendant hired an attorney to generate an alibi or to get his or her "story straight." *Sizemore v. Fletcher*, 921 F.2d 667, 671 (6th Cir. 1990)(internal citations omitted).

16

In *Samu v. Elo,* 14 F.App'x 477, 479 (6th Cir. 2001), the Sixth Circuit held that a federal habeas petitioner failed to show any prejudice resulting from the prosecutor's comment that petitioner had consulted with an attorney shortly after the murder for which he was convicted, where the comment was an isolated incident which occurred during cross-examination and was not revisited or developed during closing argument. Habeas relief should be denied where the prosecutor's comments offer no suggestion that the petitioner's hiring of an attorney establishes his or her guilt. *Ridley v. Walter*, 1999 WL 1040089, *1 (9th Cir. November 5, 1999).

The prosecutor's comment that petitioner was accompanied by his father and his attorney was an isolated incident which occurred during the direct-examination of Detective Steven Wittebort and was not revisited or developed during closing argument.

The prosecutor questioned Detective Wittebort about the attempts to arrest petitioner following the issuance of an arrest warrant. Wittebort testified that he consulted the LEIN system, obtained the address of petitioner's mother and father, and then contacted the Oakland County Sheriff's Office to look for petitioner in Farmington Hills and Detroit. Wittebort further testified that arrangements were made for petitioner to turn himself in, accompanied by his father and his attorney. (T. 3/11/2010, Vol. III, pp. 69-70). Trial counsel did not object to the testimony. Wittebort's comment that petitioner's father and attorney were present at the time of the arrest was unresponsive and not elicited. The record does not indicate that the prosecutor knew Wittebort would mention the presence of counsel at the time of arrest. The reference to petitioner's

17

attorney "was an unsolicited aside to testimony that was otherwise responsive to reasonable questioning." *United States v. Spires*, 514 F.App'x 569, 574 (6th Cir. 2013). As a result, the prosecutor did not improperly refer to the petitioner's right to exercise his right to an attorney. This part of petitioner's prosecutorial misconduct claim is meritless.

Petitioner next alleges that the prosecutor introduced and improperly argued other bad acts evidence, in violation of M.R.E. 404(b).

Although petitioner alleges prosecutorial misconduct, his claim "amounts in the end to a challenge to the trial court's decision to allow the introduction of this evidence." *Webb v. Mitchell*, 586 F.3d 383, 397 (6th Cir. 2009). "A prosecutor may rely in good faith on evidentiary rulings made by the state trial judge and make arguments in reliance on those rulings." *Cristini v. McKee*, 526 F.3d 888, 900 (6th Cir. 2008). The Michigan Court of Appeals found a proper purpose existed for the admission of the evidence as follows:

> The record shows that the prosecutor's questions regarding whether defendant had shot himself in the stomach were not for the purpose of introducing evidence of defendant's other crimes, wrongs, or acts pursuant to MRE 404(b). Rather, the questions were posed to impeach defendant's testimony that he did not own or carry a gun during the timeframe surrounding the Pontiac shooting. Keel opened the door to such impeachment by initially questioning defendant regarding whether he owned or carried a gun. Thus, the prosecutor's questions in that regard were proper.

*People v. Chenault*, 2012 WL 12507825, at *14.

The trial judge concluded that this evidence was relevant and admissible.

18

Furthermore, there is no violation of clearly established federal law for the prosecutor to rely on the trial judge's ruling in admitting this "other acts" evidence of a post-offense shooting in Detroit, regardless if the trial judge's ruling was correct, thus petitioner is not entitled to habeas relief on his claim. *See Key v. Rapelje*, 634 F.App'x 141, 146–47 (6th Cir. 2015).

Petitioner alleges that the prosecutor improperly argued during closing argument that petitioner happened to be shot 30 days later in Detroit to show that petitioner was more likely the shooter during the Pontiac incident. The Michigan Court of Appeals found that the comments were improper but concluded that the comments did not undermine the fairness of petitioner's trial as follows:

> [T]he issue presented in this case was whether defendant or Chambers shot Harris. Defendant admitted that he contacted Chambers to purchase cocaine, that he was present at the scene of the Pontiac shooting, and that he had previously been involved in other drug deals with people who were armed with guns. Given defendant's testimony that it was not unusual for him to be involved in drug deals in which weapons were involved, the fact that he was shot within thirty days after the Pontiac incident did not make it any more or less likely that he rather than Chambers committed the shooting. Therefore, the admission of the evidence, although admitted for improper propensity purposes, did not warrant reversal.

*People v. Chenault*, 2012 WL 12507825, at *14.

Petitioner next alleges that the prosecutor became an unsworn witness by informing the jury that Erica Upshaw and Joshua Koch would not be present to testify because one was in prison and the other was a fugitive. (T. 3/8/2010, Vol. I, p. 14-15).

It is improper for a prosecutor during argument to bring to the jury any purported

facts which have not been introduced into evidence and which are prejudicial. *Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000).  However, prosecutors must be given leeway to argue reasonable inferences from the evidence. *Id.*

The Michigan Court of Appeals rejected petitioner's claim as follows:

> The prosecutor's mention of Koch and Upshaw during his opening statement was consistent with his responsibility to outline the facts and to explain why they would not be present to testify. "The purpose of an opening statement is to tell the jury what the advocate proposes to show." *People v. Moss*, 70 Mich.App 18, 32; 245 NW2d 389 (1976). Moreover, any alleged error was cured by the trial court's instruction to the jury that the attorneys' statements and comments were not evidence. "Jurors are presumed to follow their instructions." *People v. Meissner*, 294 Mich.App 438, 457; 812 NW2d 37 (2011).

*People v. Chenault*, 2012 WL 12507825, at *15.

The prosecutor in this case did not argue any facts that had not been introduced into evidence.  When the prosecutor referred to why Koch and Upshaw would not be present to testify, he did so only to explain why these witnesses were not in court to testify, even though they were present at the time of the shooting.  Such comments were not improper. *See e.g. United States v. Washam*, 468 F.App'x 568, 573–74 (6th Cir. 2012)(when viewed in context, there was nothing improper about prosecutor's opening statement informing jury that some evidence about the crime would not be admitted).  In any event, the prosecutor's remarks were ameliorated by the trial court's instruction that the lawyers' comments and statements were not evidence. (T. 3/11/2010, Vol. III,  p. 190). *See Hamblin v. Mitchell,* 354 F.3d 482, 495 (6th Cir. 2003).

Petitioner alleges that the prosecutor expressed his personal opinion during

rebuttal when he told the jury "You have the option to choose either first degree premeditated or first degree felony or both.  I say he committed both." (T. 3/11/2010, Vol. III, p. 184).

A prosecutor may not express a personal opinion concerning the guilt of a defendant or the credibility of trial witnesses, because such personal assurances of guilt or vouching for the veracity of witnesses by the prosecutor "exceeds the legitimate advocates' role by improperly inviting the jurors to convict the defendant on a basis other than a neutral independent assessment of the record proof." *Caldwell v. Russell,* 181 F.3d 731, 737 (6th Cir. 1999)(internal citations omitted).  However, a prosecutor is free to argue that the jury should arrive at a particular conclusion based upon the record evidence. *Id.*  "[G]enerally, improper vouching involves either blunt comments, or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony." *See United States v. Francis,* 170 F.3d 546, 550 (6th Cir. 1999)(internal citations omitted).  It is worth noting that the Sixth Circuit has never granted habeas relief for improper vouching. *Byrd v. Collins,* 209 F.3d at 537, and n. 43.  Even on direct appeal from a federal conviction, the Sixth Circuit has held that to constitute reversible error, a prosecutor's alleged misconduct of arguing his personal belief, in a witness' credibility or in a defendant's guilt, must be flagrant and not isolated. *See United States v. Humphrey,* 287 F.3d 422, 433 (6th Cir. 2002).

Petitioner is not entitled to habeas relief on this claim because the prosecutor's

comment that he believed that petitioner could be found guilty of both first degree premeditated murder and first degree felony murder were brief and isolated and based on evidence presented at trial. Finally, even if these statements amounted to improper vouching, they did not rise to the level of a due process violation necessary for federal habeas relief, because the sizeable amount of evidence offered by the state against petitioner made it unlikely that the jury was misled by these brief statements. *See Wilson v. Mitchell,* 250 F.3d 388, 398 (6th Cir. 2001). Furthermore, any error committed in a prosecutor's closing argument can be corrected "by instructing the jury that closing arguments are not evidence." *United States v. Crosgrove*, 637 F.3d 646, 664 (6th Cir. 2011).

Petitioner next claims that the prosecutor misstated the law by informing the jury that he only needed to prove the crime committed based on the evidence without reasonable doubt. (T. 3/8/2010, Vol. I, p. 32; 3/11/2010, Vol. III, p. 179). Petitioner claims that the prosecutor misstated the law during *voir dire* and when explaining premeditation and reasonable doubt during closing argument. In rejecting this claim, the Michigan Court of Appeals found that the trial court judge "instructed the jury that it was to follow only the court's instructions on the law, and the trial court correctly instructed the jury on reasonable doubt and the elements of premeditated murder." The Michigan Court of Appeals further found that "the trial court's instructions cured any alleged misstatement of law by the prosecutor." *Chenault*, 2012 WL 12507825, at *16. In light of the trial court's instructions on premeditation and reasonable doubt, any misstatements

22

by the prosecutor were harmless error, at worst. *See United States v. Deitz,* 577 F.3d 672, 696-97 (6th Cir. 2009).  Petitioner is not entitled to relief on his unsworn testimony and vouching claims.

Finally, although petitioner argues that he should be given relief due to the cumulative effect of his prosecutorial misconduct claims, there is no clearly established federal law to grant relief on the cumulative effect. *See Lorraine v. Coyle,* 291 F.3d 416, 447 (6th Cir. 2002).  Petitioner is not entitled to relief on his second claim.

**C.  Claims # 3 and # 4.  The ineffective assistance of counsel claims and evidentiary hearing claim.**

The Court will consolidate Claims 3 and 4 together because they are interrelated.

In Claim 3, petitioner alleges that he was denied is right to the effective assistance of counsel when trial counsel Alvin Keel (a) failed to object to the improper charge at trial, (b) agreed to an improper charge for trial, (c) failed to request an instruction and to object to erroneous jury instructions, (d) failed to object to a juror, (e) failed to obtain video recorded statements of witnesses, (f) failed to challenge the identification of a prosecution witness , and (g) failed to object to prosecutorial misconduct.

In Claim # 4, petitioner alleges that he was denied his right to an evidentiary hearing in connection with his ineffective assistance of counsel claims.

Taking petitioner's fourth claim first, this Court does not have the power to grant habeas relief on petitioner's claim that the Michigan Court of Appeals improperly denied his motions to remand for an evidentiary hearing pursuant to M.C.R. 7.211.  There is no

federal constitutional right to appeal a state court conviction. *Cleaver v. Bordenkircher*, 634 F.2d 1010, 1011 (6th Cir. 1980). Where a habeas petitioner alleges a denial of his or her right to appeal a state criminal conviction, he or she is not entitled to federal habeas relief. *Tate v. Livesay*, 612 F. Supp. 412, 413 (M.D. Tenn. 1984). In addition, violations of state law and procedure which do not infringe specific federal constitutional protections are not cognizable claims under Section 2254. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Whether the Michigan Court of Appeals erred in its application of M.C.R. 7.211 in denying petitioner's motions for an evidentiary hearing on his ineffective assistance of counsel claims is a question of state law that cannot be reviewed in a federal habeas petition. *See Hayes v. Prelesnik,* 193 F.App'x 577, 584 (6th Cir. 2006). Moreover, there is no clearly established Supreme Court law which recognizes a constitutional right to a state court evidentiary hearing to develop a claim of ineffective assistance of counsel on appeal. *Id.* at 585.

Even if there is a due process component to petitioner's claims involving the denial of his motions to remand by the Michigan Court of Appeals, deprivation of this sort would not form the basis for issuing a writ of habeas corpus, but might support a request for an evidentiary hearing in this Court for the purpose of developing a record on the petitioner's ineffective assistance of counsel claims. *See May v. Renico,* 2002 WL 31748845, *5 (E.D. Mich. November 12, 2002). This Court must determine whether petitioner is entitled to an evidentiary hearing on his claims.

When deciding whether to grant an evidentiary hearing, a federal court must

consider whether such a hearing could enable the habeas petitioner to prove the petition's factual allegations, which, if true, would entitle the petitioner to federal habeas relief on his claim or claims. *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). "[B]ecause the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate." *Id.* If the record refutes the habeas petitioner's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing. *Id.* Stated differently, a habeas petitioner is not entitled to an evidentiary hearing on his claims if they lack merit. *See Stanford v. Parker,* 266 F.3d 442, 459-60 (6th Cir. 2001). A habeas petitioner is also not entitled to an evidentiary hearing on his claims of ineffective assistance of counsel where the petitioner fails to allege specific facts which, if true, would entitle him to relief on his claims. *See Barber v. Birkett,* 276 F. Supp. 2d 700, 706 (E.D. Mich. 2003)(petitioner was not entitled to an evidentiary hearing on his claims that he was denied his right to counsel and that his appellate counsel rendered ineffective assistance, where he did not assert any facts which, if true, would establish a constitutional error). As will be discussed below, petitioner's ineffective assistance of counsel claims are without merit, therefore, he is not entitled to an evidentiary hearing on these claims.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was

25

so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*. In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id*. To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. "*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011)(quoting *Harrington*, 562 U.S. at 112). The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)(quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the

*Strickland* standard was unreasonable. This is different from asking whether defense

counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 562 U.S.

at 101. Indeed, "because the *Strickland* standard is a general standard, a state court has

even more latitude to reasonably determine that a defendant has not satisfied that

standard." *Knowles,* 556 U.S. at 123 (citing *Yarborough v. Alvarado*, 541 U.S. at 664).

Pursuant to the § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a

*Strickland* claim brought by a habeas petitioner. *Id.* This means that on habeas review of

a state court conviction, "[A] state court must be granted a deference and latitude that are

not in operation when the case involves review under the *Strickland* standard itself."

*Harrington*, 562 U.S. at 101. "Surmounting *Strickland's* high bar is never an easy task."

*Id.* at 105 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)).

In addition, a reviewing court must not merely give defense counsel the benefit of

the doubt, but must also affirmatively entertain the range of possible reasons that counsel

may have had for proceeding as he or she did. *Cullen v. Pinholster,* 563 U.S. 170, 196

(2011).

Petitioner alleges that his trial counsel was ineffective by failing to object to an

improper charge and agreeing to the improper charge at trial.

At the conclusion of the preliminary examination, petitioner was bound over to

circuit court on a charge of first-degree felony murder, as charged in the initial

information. The charge was later amended to include open murder. The Michigan

Court of Appeal's findings comported with the evidence produced at the preliminary

exam and did not prejudice petitioner:

> In this case, the amendment did not involve a new or different crime, defendant was fully aware of the nature of the charges against him, and the amendment did not affect defendant's defense that he was not the shooter. Moreover, the open murder charge fully comported with the evidence presented at the preliminary examination, which supported both a felony murder and a premeditated murder theory, and the amendment was made months before trial. Thus, because an objection to defendant proceeding to trial on the open murder charge would not have been successful, Keel did not render ineffective assistance of counsel by failing to object.

*Chenault*, 2012 WL 12507825, at *8.

Because petitioner has failed to show that he was prejudiced by the amendment to the information, petitioner is unable to establish that counsel was ineffective for failing to challenge the amendment of the information at trial or on direct appeal. *See Olden v. U.S.,* 224 F.3d 561, 567 (6th Cir. 2000)(counsel's failure to challenge indictment for variance was not ineffective assistance of counsel, where defendant did not establish prejudice from any purported variance). Petitioner's claim is without merit.

Petitioner alleges that trial counsel failed to request an instruction on "mere presence." Trial counsel was not ineffective for failing to request a jury instruction on mere presence because there was no evidence that petitioner was merely present while other people committed the crimes. *Cross v. Stovall*, 238 F.App'x 32, 39 (6th Cir. 2007).

Petitioner claims that the trial court instructed the jury about out-of-court statements when he did not make any statements to law enforcement. The Michigan Court of Appeals found that petitioner waived this issue by initially objecting to the instruction and then agreeing that the instruction was appropriate. The Michigan Court

of Appeals further found that petitioner failed to make an argument or show that the outcome of his trial would have been different had the instruction not been given. *Chenault*, 2012 WL 12507825, at *10.

Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. *See Workman v. Bell,* 178 F.3d 759, 771 (6th Cir. 1998). Petitioner does not allege nor show that counsel was deficient for agreeing to this instruction or that he was prejudiced by counsel's failure to object. Petitioner is not entitled to relief on this claim

Petitioner claims that trial counsel was ineffective by failing to further question a juror named Nicholas George or for failing to remove Mr. George after the juror revealed he went to high school with petitioner.

The Michigan Court of Appeals rejected the claim, because Mr. George expressed his ability to be fair and impartial and nothing from the record indicated "that George harbored a secret bias against defendant." *People v. Chenault*, 2012 WL 12507825, at *11.

To maintain a claim that a biased juror prejudiced him, for purposes of maintaining an ineffective assistance of counsel claim, a habeas petitioner must show that the juror was actually biased against him. *See Hughes v. United States,* 258 F.3d 453, 458 (6th Cir. 2001); *see also Miller v. Francis,* 269 F.3d 609, 616 (6th Cir. 2001)(when a claim of ineffective assistance of counsel is founded on a claim that counsel failed to strike a biased juror, the defendant must show that the juror was

actually biased against him).

Petitioner failed to show that he was prejudiced by counsel's failure to challenge this juror, in light of the fact that this juror stated that he could be fair and impartial in deciding petitioner's case. *See Baze v. Parker,* 371 F.3d 310, 318-22 (6th Cir. 2004). Because petitioner failed to show that this juror had an actual bias towards him, he failed to show that he was prejudiced by counsel's decision not to strike this juror. Petitioner's juror claim is without merit.

Petitioner alleges that trial counsel was ineffective by failing to ask for a continuance to obtain the video recorded statements of Holloway and Chambers. Both Holloway and Chambers produced written statements following a videotaped interview. Both were present to give testimony at the preliminary exam and at petitioner's trial. Defense counsel had an opportunity to extensively cross-examine Holloway and Chambers. This Court will not second guess whether it was counsel's trial strategy to not ask for a continuance in connection with the videotaped interviews. Furthermore, defense counsel's failure to seek a continuance after discovering that the statements given by Holloway and Chambers had been recorded did not deprive the petitioner of the effective assistance of counsel, in light of the fact that counsel attempted to discredit any harmful evidence and there is no evidence that additional time would have aided the defense. *See Johnson v. Bell,* 525 F.3d 466, 487-88 (6th Cir. 2008).

Petitioner alleges that trial counsel failed to challenge and seek suppression of the out-of-court and in-court identifications of petitioner by the witnesses. Petitioner,

however, does not argue why the identification procedures were unduly suggestive.

Petitioner is not entitled to relief on this claim because it is conclusory and unsupported.

*See Workman v. Bell,* 178 F.3d at 771.

Petitioner next contends that counsel was ineffective for failing to object to the

prosecutorial misconduct he complains of in his second claim.

To show prejudice under *Strickland* for failing to object to prosecutorial

misconduct, a habeas petitioner must show that but for the alleged error of his trial

counsel in failing to object, there is a reasonable probability that the proceeding would

have been different. *Hinkle v. Randle,* 271 F.3d 239, 245 (6th Cir. 2001). The Michigan

Court of Appeals reasonably denied petitioner's claim as follows:

> [T]he prosecution's failure to turn over the recordings did not undermine
> confidence in the outcome of the trial. Defendant has therefore failed to
> establish that there exists a reasonable probability of a different result if Keel
> had sought a continuance and obtained the recordings.

*People v. Chenault*, 2012 WL 12507825, at *11.

Because the Court has already determined that the video recordings were not

material and would not have undermined confidence in the jury's verdict, petitioner was

not denied a fundamentally fair trial; petitioner cannot establish that he was prejudiced

by counsel's failure to challenge any prosecutorial misconduct, including the failure to

produce the video recordings. *See Slagle v. Bagley,* 457 F.3d 501, 528 (6th Cir. 2006).

Petitioner is not entitled to relief on his prosecutorial misconduct claims or his

ineffective assistance of trial counsel claims. Furthermore, petitioner is not entitled to an

evidentiary hearing on these claims because they are meritless.

## IV. Conclusion

The Court will deny the petition for a writ of habeas corpus. The Court will also deny a certificate of appealability to petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484.[4]

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right with respect to his claims. The Court will also deny petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *See Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

---

[4] "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

## V. <u>ORDER</u>

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED that a certificate of appealability is **DENIED.**

IT IS FURTHER ORDERED that petitioner will be **DENIED** leave to appeal *in forma pauperis.*


<u>s/John Corbett O'Meara</u>
United States District Judge

Date:  December 1, 2017



I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, December 1, 2017, using the ECF system and/or ordinary mail.


<u>s/William Barkholz</u>
Case Manager